[Cite as *State v. Cox*, 2019-Ohio-4476.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-43 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-197 |
| | : | |
| BRIAN MICHAEL TODD COX | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of November, 2019.

. . . . . . . . . . .

SAMANTHA B. WHETHERHOLT, Atty. Reg. No. 0092010, Champaign County Prosecutor's Office, Appellate Division, 200 North Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

MICHAEL R. PENTECOST, Atty. Reg. No. 0036803, 117 South Main Street, Suite 400, Dayton, Ohio 45422
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Brian Michael Todd Cox appeals from his conviction, following a jury trial, of trafficking in marijuana (Count I), possession of marijuana (Count II), illegal use or possession of marijuana drug paraphernalia (Count III), and domestic violence (Count IV). He was sentenced to seven months in prison for trafficking and to 18 months for domestic violence, to be served consecutively, for an aggregate term of 25 months; the court did not impose jail time on the other offenses.[1] Cox's trafficking offense is the sole issue in this appeal. We hereby affirm the judgment of the trial court.

{¶ 2} Cox was indicted on September 7, 2017 on one count of trafficking in marijuana, in violation of R.C. 2925.03(A)(1)(C)(3)(a), a felony of the fifth degree; one count of possession of marijuana, in violation of R.C. 2925.11(A)(C)(3)(a), a minor misdemeanor; one count of illegal use or possession of marijuana drug paraphernalia, in violation of R.C. 2925.141(C)(F), a minor misdemeanor, with a specification for forfeiture of property; and one count of domestic violence, in violation of R.C. 2919.25(A)(D)(3), a felony of the fourth degree. He pled not guilty on August 29, 2018.

{¶ 3} On October 10, 2018, the Court found that Cox had failed to comply with the pretrial services program by failing to appear on September 19 and October 5, 2018, which Cox admitted. Cox also admitted, and the trial court found, that he had used marijuana on October 2-3, 2018. The court scheduled a pretrial admissibility hearing at the State's request.

---

[1] Cox was fined $100 each on Counts I and IV and $50 each on Counts II and III. The judgment entry also provides that, pursuant to the forfeiture specification related to Count III, glass marijuana pipes, a digital scale, plastic baggies, a glass tray, a grinder, and utility knife/razor were forfeited to the Urbana Police Department.

{¶ 4} On October 18, 2018, the State filed a notice of its intent to use other acts evidence at trial. Specifically, the State indicated that it would elicit testimony from B.S., the victim of Cox's prior domestic violence conviction in Champaign M.C. No. 2017 CRB 540.[2] The State indicated that this witness would also provide testimony regarding Cox's trafficking in marijuana. On the same day, an agreed stipulation regarding Cox's criminal history (in Case No. 2017 CRB 540) was filed.

{¶ 5} After a hearing, on October 23, 2018, the court ruled on the admissibility of other acts evidence. The court admitted eight exhibits for the State, and the parties stipulated that items recovered from Cox contained "vegetative matter found to be marijuana." The court also accepted the following agreed stipulations by the parties: State's Exhibit 1 was "cigarette butts and ashes from a glass container with a metal lid," with the marijuana weighing 2.54 grams; State's Exhibit 4 was a plastic lid containing marijuana weighing .11 grams; State's Exhibit 8 was a glass marijuana bong "with scrapings from slider from marijuana pipe" containing marijuana weighing .24 grams; State's Exhibit 9 was a glass marijuana pipe that had not been tested; State's Exhibit 10 was a portable digital scale containing marijuana residue with a weight of .01 grams; State's Exhibit 11 was a metal grinder containing marijuana with a weight of .09 grams; State's Exhibit 14 contained two glass jars with marijuana weighing .02 grams; and State's Exhibit 15 contained two Ziploc bags with .06 grams of marijuana. The parties also stipulated that marijuana is a Schedule I controlled substance pursuant to R.C. 3719.41(C).

---

[2] As a victim of domestic violence, we use B.S.'s initials to protect her privacy. Where other witnesses or people discussed at trial share a last name, we will use first names for clarity.

{¶ 6} On October 25, 2018, Cox filed a motion in limine in which he asked to court for a pretrial ruling on the admissibility of the following: "Any hearsay by a third party not made in the presence of the Defendant or speculation as to the purpose of the transaction alleged to be a sale of illegal drugs on August 25, 2017." The State responded to the motion on October 29, 2018. No pretrial ruling was made. Trial commenced on October 30, 2018.

{¶ 7} At trial, B.S. testified that on September 5, 2017, she resided in Urbana with Cox, who was her boyfriend, and her son. On that date, she reported to the police that Cox had physically assaulted her that morning. "He had choked me and punched me in the side that morning and hit me in the face as well." B.S. identified photographs of the left and right sides of her neck reflecting scratches and red marks from the incident. She stated that, after reporting the incident, an officer accompanied her to her home to arrest Cox.

{¶ 8} B.S. further testified that Cox was not present when she and the officer arrived at the home and that some of Cox's clothing was missing; his marijuana was missing as well. B.S. stated that, in their bedroom, there "was marijuana paraphernalia placed on top of the dresser. And that wasn't there when I left that morning." B.S. stated that Cox "normally kept" those items in a shoebox that "was normally hidden in various places." She testified that she and Cox had used marijuana together on September 3, 2017, and that she believed the shoebox had contained 2 or 3 ounces of the drug in a Ziploc bag at that time.

{¶ 9} B.S. identified State's Exhibit 3 as "various pieces of glass that went to * * * a bong" she and Cox used. She identified other exhibits as follows: State's Exhibit 5 as

a "cigarette roller" she and Cox used to "roll marijuana"; State's Exhibit 8 as a bong she and Cox used; State's Exhibit 9 as "a marijuana bowl" that was removed from her home by law enforcement; State's Exhibit 10 as a digital scale she and Cox used to weigh marijuana; State's Exhibit 11 as a marijuana "grinder" used by Cox; and State's Exhibit 13 as a photo of Cox's shoebox containing small baggies inside a larger baggie, along with multiple small star-shaped stickers. She stated that the above items, as well as marijuana and "maybe a couple other paraphernalia items," were normally all stored in the shoebox. When asked what the baggies were used for, B.S. responded, "[t]o sell other people marijuana" after packaging smaller quantities for sale. She further identified State's Exhibit 14 as two large empty mason jars from her home that were used by her and Cox to store marijuana, and State's Exhibit 15 as an empty gallon-size Ziplock bag that was used to store marijuana.

{¶ 10} The following exchange occurred on direct examination:

Q. [B.S.], can you tell me about a trafficking incident that occurred on August 25, 2017?

A. Yes.

* * *

Q. On that date, on August 25, what happened?

A. I took the Defendant to somebody's house to collect money from a previous marijuana sale.

* * *

THE WITNESS: I drove the Defendant to Ashley Hall's house to collect money that I believe was owed because of marijuana, which was

told to me by the Defendant.

\* \* \*

Q.   Was it here in Urbana?

A.   Yes.

Q.   And what did the Defendant tell you about why you were going to this specific residence?

A. That the person that we were meeting husband's [sic] owed him money for marijuana.

Q.   Did the Defendant tell you when he had sold marijuana to this individual?

A.   No.

\* \* \*

Q.   And how did you know what house to go to?

A.   I didn't.   I had never been there before.   He directed me.   And then I seen Ashley Hall walking to the road.   And \* \* \* he said, there she is, and pointed at her.   And then I pulled up next to Ashley Hall who I had seen for the first time that day.

Q.   When you pull up in front of Ashley Hall's house, what happened next?

A.   She got in the backseat and I drove around the block.

Q.   And then what happened while she was in the car?

A.   She gave him money. \* \* \* And I let her out on East Lawn Avenue.

Q. When you first drove down the street where Ashley Hall lived * * * did you see anybody you recognized?

A. Yes. I recognized the police officer that was mowing his lawn like on the opposite side of the street a couple houses down, I had known him before. Recognized him as a[n] Urbana Police Officer.

* * *

A. * * * His name was Officer Jacobs.

* * *

Q. And what kind of trouble did you actually get into with these incidents on August 25 and September 5?

A. I received a felony five trafficking marijuana * * *.

Q. And that F-5 trafficking that you talked about, were you ultimately convicted of that?

A. Yes.

{¶ 11} On cross-examination, B.S. testified that she was then on community control sanctions. She also acknowledged that she had multiple prior fifth-degree felony theft convictions, a prior fourth-degree felony theft conviction, prior convictions for possession of heroin and cocaine, and a prior conviction for complicity to the commission of grand theft.

{¶ 12} Officer Mike Cooper of the Urbana Police Department testified that he went to B.S.'s home on September 5, 2017, after she reported the domestic violence incident. He stated that when he entered the bedroom in the home, he observed "several drug items and drug paraphernalia laying out on the dresser in plain view." Cooper stated that

he smelled marijuana in the room.  B.S. consented to a search, and Cooper identified numerous exhibits which came from B.S.'s home. Regarding State's Exhibit 13, Cooper testified that "star stickers" were found inside the shoebox and that "[s]tickers and stamps are sometimes marked as to a specific dealer."

{¶ 13} Cooper testified that he had worked on 50 to 100 marijuana investigations, and that in the course thereof, he had seen "a lot of storage devices," including gallon-sized baggies, "large container glass jars that would actually store the marijuana," and "smaller baggies that you would use to transport the small weights of drugs."  Cooper testified that marijuana can be sold in quantities "from a tenth of a gram to an eighth to a quarter of a gram to a baggy full, which would be like an ounce."  Cooper testified that possession of approximately three ounces of marijuana in his experience suggests that "there is more than actual personal usage there.  They are buying in large quantities * * *." Cooper also testified that digital scales are used to weigh out different weights or amounts of drugs when trafficking.

{¶ 14} On cross-examination, Cooper testified that a sweep for marijuana in the bedroom was performed in the course of the investigation, and that under 12 grams were found.  On redirect examination, Cooper stated that the presence of marijuana and various storage containers indicated to him in his experience that "there was trafficking going on inside the residence."

{¶ 15} After Cooper's testimony, the court advised the jury that Court's Exhibit 1 was an agreed stipulation regarding Cox's prior conviction for domestic violence in Champaign County Municipal Court Case No. 2017 CRB 540.  The court also advised the jury that Court's Exhibit 2 was the agreed entry of stipulation regarding eight of the

State's exhibits as set forth above.

{¶ 16} Lieutenant Josh Jacobs testified that he had worked for the Urbana Police Department for almost 19 years. He testified that, typically, transactions between drug traffickers and purchasers occur quickly because there "is not a lot of trust between the two sides commonly." He stated that it is common for traffickers to supply or "front" drugs to a purchaser without immediate payment.

{¶ 17} Jacobs testified that there was a house "catercorner [sic] from me to where there have been problems before with an individual named Ashley Hall living at that residence," and that he had witnessed drug transactions there in 2016. He testified that, on August 25, 2017, while he was mowing his front lawn at his home on a dead end street, he observed "a vehicle that was uncommon for my neighborhood." Jacobs observed the vehicle -- a "beat up" black Pontiac Grand Prix, driven by a female with a male passenger -- at about 4:14 p.m. He made note of it in his cell phone. Jacobs then observed Ashley get into the vehicle. By the time Jacobs finished mowing, he observed Ashley return to her residence on foot. Jacobs noted the time, 4:20 p.m. According to Jacobs, based on his prior experience with Ashley Hall, "having drug traffickers come into my neighborhood," and there being "a very short time frame" between when she was picked up "and then obviously dropped off around the corner," Jacobs suspected that she was purchasing drugs. Jacobs testified that he recognized B.S. as the driver of the vehicle, and when he checked the license plate, the car was registered to her.

{¶ 18} On the second day of trial, the court filed an entry granting in part and denying in part Cox's motion in limine. The court granted the motion "as it pertained to excluding the speculative testimony of Ashley Hall as to why [she] was transferring $40.00

to fellow vehicle occupants [B.S.] and the Defendant." It denied the motion with respect to excluding certain details of Cox's prior domestic violence conviction and other prior bad acts.

{¶ 19} Ashley Hall testified that her husband, Craig Hall, had substance abuse problems in August 2017, and that he used marijuana daily. She stated that Craig obtained marijuana on August 23, 2017. When asked how she knew he obtained it that day, she responded, "he was out and didn't have any and then he had some." She stated that "Brian" came to get the money on August 25, 2017, and she gave him $40 after speaking to Craig on the phone. Ashley testified that Brian and another person arrived at her home in a black vehicle; she had never met Brian before that day.

{¶ 20} Ashley testified that marijuana "has a distinct odor. Sometimes it can smell skunky." She stated that it looks like "a little green * * * bush thing. * * * It's just like little buds." She testified that the marijuana Craig obtained on August 23rd smelled "skunky like regular marijuana" and looked like marijuana she had seen in the past. Ashley testified that she did not ask Craig the reason for giving Brian $40, but she "had a good idea." The following exchange occurred with the prosecutor:

> Q. What do you base that belief that you had an idea what the $40 was for?
>
> A. I've been married to my husband for a very long time. And he had marijuana that he got from somewhere. Never met this kid a day in my life. He owed him 40 bucks. He doesn't normally just borrow $40 from strangers off the street for nothing. I'm guessing – so I guess I've been married to him for so long and I know him pretty well.

Q. So what was the $40 for?

MR. FOULK: Objection.

THE COURT: Sustained.

**{¶ 21}** On cross-examination, Ashley Hall acknowledged having a 2014 conviction for trafficking in heroin, a 2015 conviction for theft from an elderly person, and a 2016 conviction for possession of heroin and cocaine. Ashley also acknowledged that she was then under indictment for possession of heroin, aggravated possession of drugs, illegal use or possession of drug paraphernalia, and endangering children.

**{¶ 22}** In response to a question by the court, Ashley identified Brian, to whom she gave $40, as Cox.

**{¶ 23}** At the close of the State's evidence, the court overruled Cox's motion for acquittal.

**{¶ 24}** Jessica Webster testified for the defense; she and Cox had been friends for about 11 years. She stated that in the first week of September 2017, she picked Cox up as he was walking down the street in Urbana. Webster stated that Cox carried a drawstring bag that was not very big and contained "just clothes." She stated that she did not observe or smell any marijuana in the bag.

**{¶ 25}** The jury found Cox guilty on all of the charges, and he was sentenced as described above.

**{¶ 26}** On appeal, Cox asserts two assignments of error, which we will consider together:

THERE WAS INSUFFICIENT EVIDENCE PRESENTED AT TRIAL

TO SUSTAIN A CONVICTION FOR TRAFFICKING IN MARIJUANA.

APPELLANT'S CONVICTION FOR TRAFFICKING IN MARIJUANA

IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 27} Cox asserts that the State's theory of the case -- that Cox delivered marijuana to Craig Hall on August 23, 2017 and that Craig directed Ashley Hall to pay Cox $40 on August 25, 2017 -- was unsupported by the evidence and could not "support a conviction for trafficking in marijuana." According to Cox, the State failed to prove the nature of the substance, a delivery by Cox, or "venue." He argues that there was "nothing but speculation" as to whether the substance received by Craig Hall was from Cox, or whether the payment on August 25 was for the alleged delivery of marijuana to Craig. Cox's arguments relate only to his conviction for trafficking in marijuana.

{¶ 28} As this Court recently noted:

A sufficiency of the evidence analysis focuses upon whether the prosecution presented adequate evidence, viewing such evidence in the light most favorable to the prosecution, to sustain the verdict. (Citations omitted.) *State v. Radford,* 2d Dist. Clark No. 2016-CA-80, 2017-Ohio-8189, ¶ 14. The prosecution has presented sufficient evidence when "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

A manifest weight analysis, in contrast, requires an appellate court to review the record, weigh the evidence and any reasonable inferences allowed by the evidence, consider witness credibility, and determine whether the trier of fact, in resolving any evidentiary conflicts, "clearly lost

its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at ¶ 15. This consideration of the evidence must be exercised with caution so that a new trial will only be granted "in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Though different legal concepts are involved, if it is concluded that a verdict is supported by the manifest weight of the evidence, the evidence, by necessity, is legally sufficient. *Id.* at ¶ 16.

* * *

The credibility of the witnesses and the weight to be given to their testimony are primarily matters for the trier of fact to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 230, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). An appellate court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the factfinder lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist.

Champaign No. 97-CA-03, 1997 WL 691510, *4 (Oct. 24, 1997).

*State v. Price*, 2d Dist. Montgomery No. 28150, 2019-Ohio-3201, ¶ 13-14, 17.

**{¶ 29}** Cox's indictment for trafficking in marijuana states that he, "on or about August 25, 2017, at Champaign County, Ohio, did knowingly sell or offer to sell [marijuana] in an amount less than 200 grams" in violation of R.C. 2925.03(A)(1)(C)(3)(a). That statute provides:

(A) No person shall knowingly do any of the following:

(1) Sell[3] or offer to sell a controlled substance or controlled substance analog;

* * *

(C) Whoever violates division (A) of this section is guilty of one of the following:

* * *

(3) If the drug involved in the violation is marijuana * * * whoever violates division (A) of this section is guilty of trafficking in marijuana. The penalty for the offense shall be determined as follows:

**{¶ 30}** R.C. 2925.03(C)(3)(h) states that, except as otherwise provided, if the offense involves a gift of twenty grams or less of marijuana, trafficking in marijuana is a minor misdemeanor upon a first offense and a misdemeanor of the third degree upon a subsequent offense.

**{¶ 31}** In *State v. Ayers*, 2d Dist. Montgomery No. 24829, 2012-Ohio-3175, ¶ 13-

---

[3]R.C. 3719.01(AA) provides: " 'Sale' includes delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee."

14, this court observed:

> This distinction between a sale and a de minimis gift appears in the penalty provisions of the statute and at first blush would not seem to change the elements of the offense, which are found in R.C. 2925.03(A). However, the Supreme Court of Ohio has held that * * * where a fact transforms a crime by increasing its degree, rather than simply enhancing its penalty, the fact becomes an essential element of the crime and must be proved by the state." * * *

> * * * Thus, * * * the state must prove and a trial court must designate which of the two factual scenarios exists before it can impose an appropriate sentence. * * *

{¶ 32} Having reviewed the entire record, and viewing the evidence in a light most favorable to the State, we conclude that Cox's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Lieutenant Jacobs testified that, generally, drug transactions occur quickly, and that it is common for traffickers to "front" drugs to purchasers without immediate payment. He testified that he observed B.S. in a black Pontiac Grand Prix with a male passenger; B.S. drove down his street, picked up Ashley Hall, and drove away. Jacobs noted the time of day in his phone, and he testified that he observed Ashley return approximately six minutes later on foot. Based upon his experience, Jacobs believed that Ashley was purchasing drugs.

{¶ 33} B.S. testified that when she returned to her home with law enforcement after reporting a domestic violence incident, marijuana-related items that Cox typically hid in a shoebox were on the bedroom dresser. She testified that she and Cox used marijuana

on September 3, 2017, and that at that time she believed the shoebox contained 2 to 3 ounces of marijuana. She identified a photograph of small bags inside a larger bag in the shoebox, and she testified that the small bags were used to "sell other people marijuana." She identified two large mason jars that she and Cox used to store marijuana, and an empty gallon-size Ziplock bag that she stated contained marijuana on September 3, 2017. She also identified a digital scale.

{¶ 34} B.S. testified that, on August 25, 2017, she drove Cox "to somebody's house to collect money from a previous marijuana sale." She testified that they went to Ashley Hall's house to collect money that, according to Cox, was owed because of marijuana. Specifically, B.S. testified that the husband of the person she and Cox met owed Cox money for marijuana. B.S testified that Ashley gave Cox $40, and that she then let Ashley out of the vehicle. B.S. acknowledged that as a result of the events on August 25 and September 5, 2017, she was convicted of trafficking in marijuana, a felony of the fifth degree.

{¶ 35} Officer Cooper testified that upon entering B.S.'s and Cox's bedroom, he smelled marijuana and observed "several drug items and drug paraphernalia items" on the dresser. Based on his experience in 50 to 100 marijuana investigations, Cooper testified that he had seen "a lot of storage devices" in trafficking cases, including gallon-sized baggies, large glass jars, and smaller baggies "that you would use to transport the small weights of drugs," and that a full baggie weighed approximately an ounce. Cooper also testified that digital scales are used to "weigh out different weights or amounts that you receive or traffic in." He stated that in his experience, possession of approximately three ounces of marijuana suggests "there is more than personal usage," and that based

upon the presence of the paraphernalia in the residence, he believed there was trafficking going on inside the residence.

{¶ 36} Finally, Ashley Hall testified that her husband, Craig, was a daily user of marijuana, and that he obtained marijuana on August 23, 2017. She testified that after speaking to Craig on the phone, Cox came to collect money on August 25, 2017, in a black vehicle, and she gave him $40. Ashley's testimony about the odor and appearance of marijuana made clear that she was familiar with the drug, and she stated that the marijuana she observed on August 23, 2017, was consistent with marijuana she has seen in the past. Ashley testified that she had never seen Cox before, and that Craig "doesn't normally just borrow $40.00 from strangers off the street for nothing."

{¶ 37} The jury clearly credited the State's witnesses, and we defer to the jury's assessment of credibility. In other words, based upon the evidence, if believed, the jury could have reasonably concluded that Cox told B.S. that he fronted marijuana to Craig Hall, that Craig received the marijuana on August 23, 2017, that money was owed for the marijuana, that B.S. drove Cox to obtain the money at Cox's direction on August 25, 2017, and that Ashley Hall gave the money to Cox in Champaign County. B.S. identified the marijuana-related items used by her and Cox and taken from their bedroom, and Cox stipulated that the items contained marijuana. Cooper testified that many of those items were commonly used by drug traffickers. While Cox asserts that venue was not established, even if we were to assume that Cox fronted the marijuana to Craig Hall outside of Champaign County, R.C. 2901.12(H) provides: "When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any

element of one of those offenses occurred." We conclude that venue was properly established in Champaign County. Based upon the foregoing, Cox's assigned errors lack merit, and they are overruled.

{¶ 38} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.

Copies sent to:

Samantha B. Whetherholt
Michael R. Pentecost
Hon. Nick A. Selvaggio